**FIRST CITY, TEXAS–HOUSTON, N.A., Plaintiff–Appellee,**

v.

**RAFIDAIN BANK, Defendant–Appellant,**

**Central Bank of Iraq, Defendant.**

**Docket No. 00–9556.**

United States Court of Appeals, Second Circuit.

Argued Sept. 17, 2001.

Decided Feb. 7, 2002.

Peter V. Baugher, Schopf & Weiss, Chicago, IL, (Deborah E. Decker, John L. Altieri, Jr., O'Melveny & Myers LLP, NY, NY, on the brief), for Plaintiff–Appellee.

Jonathan Sinnreich, Sinnreich & Safar, LLP, Hauppauge, NY, for Defendant–Appellant.

Before: MESKILL, JACOBS, CABRANES, Circuit Judges.

JACOBS, Circuit Judge.

In this litigation commenced under the Foreign Sovereign Immunities Act ("FSIA") of 1976, 28 U.S.C. § 1602, *et. seq.* (1994), plaintiff First City, Texas–Houston, N.A. ("First City") holds an unsatisfied default judgment against Rafidain Bank ("Rafidain"), and seeks to collect that judgment from Central Bank of Iraq ("Central Bank") on the theory that Central Bank is Rafidain's alter ego. Rafidain appeals an order of the United States District Court for the Southern District of New York (Rakoff, J.), refusing to vacate an order of civil contempt that had been entered to compel Rafidain's compliance with discovery demands directed to the alter ego question. Rafidain appeals the order on the grounds that (1) the district court lacks personal jurisdiction and (2) that subject matter jurisdiction is lacking because, even if the FSIA afforded jurisdiction in the underlying litigation involving a loan agreement and letters of credit, Rafidain is no longer a party to that action and there is no alternative jurisdictional basis for compelling Rafidain to submit to non-party discovery in the United States.

We affirm, without deciding whether Rafidain is or has been a "party," on the ground that because jurisdiction under the FSIA existed to decide the underlying litigation involving a loan agreement and letters of credit, the FSIA continues to confer jurisdiction for proceedings in aid of that money judgment.

We also affirm the district court's ruling that in serving certain discovery notices, First City effected personal service on Rafidain.

## BACKGROUND

In 1990, First City filed suit against Rafidain and Central Bank, as Rafidain's alter ego, to recover more than $50 million in unpaid principal and interest on defaulted letters of credit issued by Rafidain, Iraq's state-owned commercial bank. The district court (Martin, J.) entered default

judgment for $53.2 million against both defendants on April 26, 1991. A year later, both defendants moved to vacate the defaults; Central Bank's motion was granted on the basis that service had been insufficient, but Rafidain's motion was denied. *See First City, Texas–Houston, N.A. v. Rafidain,* No. 90 CIV. 7360, 1992 WL 296434 (S.D.N.Y. Oct.6, 1992). First City subsequently served Central Bank (for the second time) with the summons and an amended complaint, thereby commencing a new action against Central Bank. Central Bank moved to dismiss the amended complaint on grounds of sovereign immunity.

In connection with Central Bank's motion to dismiss, First City requested discovery on its contention that Central Bank is the "alter ego" of Rafidain, and served both banks with interrogatories and document requests bearing on that issue. Central Bank provided some responses in February 1995, and some more in April 1996, but has yet to fully comply. Rafidain did not respond at all. In July 1995, First City issued and served a subpoena and a set of document requests on Iraq's Permanent Representative to the United Nations in New York, as Rafidain's registered agent. Rafidain did not respond to the subpoena.

In June 1996, Central Bank renewed its motion to dismiss on several grounds, including lack of jurisdiction. First City opposed the motion on the ground that it had been hamstrung in gathering evidence by the banks' non-compliance, and separately filed a motion to compel additional responses. At the hearing on the motion to dismiss, the district court (Rakoff, J.) granted Central Bank's motion to dismiss with prejudice on grounds of sovereign immunity, without expressly deciding First City's motion to compel. First City appealed.

On July 16, 1998, this Court remanded with the following instructions:

Because Rafidain is a party to this suit, has been found to fit within the FSIA's "commercial activity" exception and because First City has a judgment against Rafidain, allowing First City to seek further discovery from Rafidain would not intrude upon the sovereign immunity, if any, of Rafidain. The district court should have permitted full discovery against Rafidain, which would have allowed First City a fair opportunity to conduct jurisdictional discovery without further impinging on [Central Bank's] immunity. Following discovery from Rafidain, the district court would then have been in a better position to assess whether discovery from [Central Bank] on the alter ego question was sufficiently likely to be productive as to warrant compelling additional jurisdictional discovery. We believe that the court's failure to take such a course, when coupled with the dismissal of the complaint, was an abuse of discretion.

Accordingly, the district court's order granting [Central Bank's] motion to dismiss is vacated. On remand, the district court is instructed to permit First City to conduct full discovery against Rafidain. After such discovery, the district court should then determine (1) whether there is an adequate factual record on which to rule whether [Central Bank] was Rafidain's alter ego, or (2) whether further discovery against [Central Bank] on the jurisdictional question is warranted.

*First City, Texas–Houston, N.A. v. Rafidain Bank,* 150 F.3d 172, 177 (2d Cir.1998) (internal citation omitted).

After the remand, First City served Rafidain with a Rule 45 subpoena duces tecum seeking jurisdictional discovery on the "alter ego" issue (the "1998 Subpoe-

na"). Rafidain, which argues that it was no longer a party to this action and was not subject to the court's jurisdiction, did not respond to the 1998 Subpoena. On November 2, 1998, First City moved to hold Rafidain in contempt. First City also moved to compel Central Bank to respond to discovery on the ground that First City had been unable to obtain discovery from Rafidain. Concurrently, Central Bank renewed its motion to dismiss for lack of jurisdiction. The district court did not order Central Bank to comply with jurisdictional discovery, but denied Central Bank's motion to dismiss because "Rafidain may yet seek to purge its civil contempt and provide the requested discovery" that could support plaintiff's 'alter ego' theory. *First City, Texas–Houston, N.A. v. Rafidain Bank*, 68 F.Supp.2d 377, 380 (S.D.N.Y.1999).

First City's motion for contempt was granted, and an Order to Show Cause against Rafidain was entered on November 19, 1998. *Id.* at 379. Rafidain did not appear or respond. Almost a year later, on November 1, 1999, the district court held Rafidain in civil contempt and imposed a fine of $1,000 per day, to continue until such time as Rafidain purged its default. *Id.* On another front, First City served a subpoena in December 1999 seeking "alter ego" documents from Richards & O'Neil, counsel for Central Bank and previous counsel of record for Rafidain. *First City Texas–Houston, N.A. v. Rafidain Bank, et al.*, 197 F.R.D. 250, 253 (S.D.N.Y.2000).

Rafidain at last appeared (with new counsel) on June 21, 2000—more than seven months after the Contempt Order had been entered against it, and for the first time since the action was recommenced against Central Bank—and moved to vacate the civil contempt order on the

grounds that the district court lacked subject matter jurisdiction and personal jurisdiction to enforce the subpoena. Rafidain took no steps to purge its contempt.

Two days later, First City responded by serving a subpoena duces tecum on Rafidain's counsel seeking, pursuant to Fed. R.Civ.P. 69, post-judgment discovery from Rafidain and restraint of assets in aid of enforcing the default judgment against Rafidain (the "2000 Subpoena"). *Id.* Rafidain moved to quash this subpoena on the ground of improper service, which motion was denied. *Id.* at 255–56.[1]

On November 8, 2000, the district court denied Rafidain's motion to vacate the contempt order, in part on the ground that it was constrained by this Court's ruling that Rafidain remained a party to the action. *See First City*, 150 F.3d at 177. The denial was framed as follows:

> In moving to vacate the Court's order of November 1, 1999 holding Rafidain in civil contempt for failure to comply with the 1998 Rafidain Subpoena, Rafidain argues, first and foremost, that the Court lacked authority to impose such an order because Rafidain by that time was no longer a party to this lawsuit and was exempt under the FSIA from being subject to third-party discovery. The first premise of the argument is effectively foreclosed, however, by the Court of Appeal's [sic] express finding that "Rafidain is a party to this suit" and that "the district court is instructed to permit First City to conduct full discovery against Rafidain." While Rafidain was not a party to the appeal in which the Court of Appeals made these determinations and therefore may have a basis in some future appeal for asking the Court of Appeals to reconsider its con-

---

1. Rafidain does not appeal from that ruling.

clusions in this regard, it would exceed the power of this lower court to disregard these clear and unequivocal determinations of the Court of Appeals. The Court therefore finds, in compliance with the Second Circuit's ruling, that Rafidain remains a party to this action. As a result, moreover, Rafidain's additional argument about the limitations of jurisdiction over non-party sovereign entities is rendered irrelevant, since Rafidain is not a non-party.

*First City*, 197 F.R.D. at 254 (internal citation omitted). The district court also ruled that service of the 1998 Subpoena was sufficient, denied Rafidain's motion to quash it, and ordered that discovery "should proceed promptly." *Id.* at 254, 256.

Rafidain now appeals the denial of its motion to vacate the civil contempt order entered for failure to comply with the 1998 Subpoena, and moves to stay all discovery pending appeal. The district court granted the motion for a stay with respect to the 1998 Subpoena, but denied it with respect to the Rule 69 2000 Subpoena seeking the post-judgment discovery. *First City, Texas–Houston, N.A. v. Rafidain Bank, et al.*, 131 F.Supp.2d 540, 542–43 (S.D.N.Y.2001). Rafidain has not yet produced any post-judgment discovery or paid any of the 1991 judgment.[2]

## DISCUSSION

On appeal, Rafidain argues that it is no longer a party to this action and that the district court therefore lacks subject matter jurisdiction under the FSIA to compel Rafidain to provide evidence or discovery. Alternatively, Rafidain argues that the court lacks personal jurisdiction over it. First City contends that Rafidain's appeal

is untimely and that this Court therefore lacks jurisdiction to hear this appeal; alternatively, First City argues that the district court has both subject matter and personal jurisdiction over Rafidain.

We conclude that Rafidain's appeal is timely and is properly before us, that personal jurisdiction has been obtained over Rafidain, and that subject matter jurisdiction exists because Rafidain's waiver of sovereign immunity for the purposes of First City's law suit against it continues through post-judgment discovery and collection of the money judgment, which includes discovery on the "alter ego" issue. We therefore affirm the order of the district court denying Rafidain's motion to vacate and quash. We need not decide whether Rafidain is still a "party" to the action.

### I

■ First City challenges appellate jurisdiction on the ground that Rafidain's appeal from the denial of its motion to vacate the contempt order is in the nature of an untimely appeal of the contempt order itself, entered on November 1, 1999, from which no appeal was taken.

■ We disagree. The district court's order denying Rafidain's motion to vacate is immediately appealable under the "collateral order" doctrine. *See First City,* 131 F.Supp.2d at 542. First City did not challenge Rafidain's motion to vacate on the ground that it was untimely raised, and we decline to consider the argument. *See Kraebel v. New York City Dep't of Hous. Preservation and Dev.,* 959 F.2d 395, 401 (2d Cir.1992) ("We have repeatedly held that if an argument has not been

---

**2.** First City has collected $55 million in compensation from the U.S. Government. *See*

*First City,* 68 F.Supp.2d at 378.

raised before the district court, we will not consider it."). The district court proceeded to entertain the motion, and entered an order that was appealable and that was timely appealed. We need not consider whether we *would have had* appellate jurisdiction if the district court had rejected Rafidain's motion to vacate as untimely and if Rafidain's present appeal were from such a ruling.

## II

Rafidain argues that it is no longer a party to this action and that the district court therefore lacks jurisdiction under the FSIA to compel Rafidain to provide discovery. Rafidain also argues that the district court lacks personal jurisdiction over it. We conclude that the district court has both subject matter jurisdiction over this action and personal jurisdiction over Rafidain.

## A. Subject Matter Jurisdiction

Rafidain does not contest that it was a party to the lawsuit that resulted in entry of the default judgment against it. The court's subject matter jurisdiction in that case was based on the FSIA, 28 U.S.C. § 1602 *et seq.*, which provides the sole source of jurisdiction of a court in the United States over a foreign state and its agencies. *See Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 610–11, 112 S.Ct. 2160, 119 L.Ed.2d 394 (1992).

As a general matter, a foreign state and its agencies (such as Rafidain) enjoy sovereign immunity:

Subject to existing international agreements to which the United States is a party at the time of enactment of this Act a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter.

28 U.S.C. § 1604. The exception to sovereign immunity applicable in this case is the "commercial activities" exception, set forth in 28 U.S.C. § 1605:

(a) A foreign state shall not be immune from the jurisdiction of the courts of the United States or of the States *in any case*

\*      \*      \*      \*      \*      \*

(2) in which *the action* is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere.....

(emphases added). Rafidain, having participated in commercial banking transactions in the United States, submitted itself to the jurisdiction of the United States courts, as well as to the procedures and legal responsibilities associated with such jurisdiction, to the extent those procedures and responsibilities are related to its commercial activities in the United States. *See Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614, 112 S.Ct. 2160, 119 L.Ed.2d 394 (1992); *Texas Trading & Mill. Corp. v. Federal Republic of Nigeria*, 647 F.2d 300, 308 (2d Cir.1981). Rafidain does not contest that it waived immunity under the "commercial activities" exception.

Given Rafidain's waiver, the district court had subject matter jurisdiction under 28 U.S.C. §§ 1330(a) and 1605(a)(2) to decide the controversy that arose from Rafidain's commercial activities carried on in the United States. The waiver by a foreign state under section 1605(a)(2), rendering it a party to an action, is broad enough to sustain the court's jurisdiction through proceedings to aid collection of a money judgment rendered in the case, including discovery pertaining to the judgment debt-

or's assets. Otherwise, the FSIA would in some cases confer jurisdiction to do no more than render an unenforceable, permanently unsatisfied judgment. No doubt, courts should proceed with care in pursuing the assets of foreign governments and their instrumentalities, and in dealing with such allegations as fraudulent transfers. But Rafidain is challenging the court's subject matter jurisdiction, not its discretion. We think that where subject matter jurisdiction under the FSIA exists to decide a case, jurisdiction continues long enough to allow proceedings in aid of any money judgment that is rendered in the case. In this case, that includes discovery regarding a possible alter ego of Rafidain that may have assets sufficient to satisfy First City's judgment.[3]

Discovery of a judgment debtor's assets is conducted routinely under the Federal Rules of Civil Procedure. *See* Fed. R.Civ.P. 69(a) ("In aid of the judgment or execution, the judgment creditor or a successor in interest when that interest appears of record, may obtain discovery from any person, including the judgment debtor, in the manner provided in these rules or in the manner provided by the practice of the state in which the district court is held."); *see also Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.,* 999 F.2d 314, 317 (8th Cir.1993) ("[T]he remedies of a judgment creditor include the ability to question the judgment debtor about the nature and location of assets that might satisfy the judgment."); *Minpeco v. Hunt,* No. 81–CIV–7619, 1989 WL 57704, at *1 (S.D.N.Y. May 24, 1989)(quoting *National Service Industries, Inc. v. Vafla Corp.,* 694 F.2d 246, 250 (11th Cir.1982)) ("A judgment creditor is entitled to discover the identity and location of any of the judgment debt-

or's assets, wherever located."); *Caisson Corp. v. County West Bldg. Corp.,* 62 F.R.D. 331, 334 (E.D.Pa.1974) ("[Under Rule 69(a),] the judgment creditor must be given the freedom to make a broad inquiry to discover hidden or concealed assets of the judgment debtor."). Subject matter jurisdiction was therefore obtained.

## B. Personal Jurisdiction

■ The order of contempt was entered to compel Rafidain's compliance with the 1998 Subpoena; Rafidain argues that it was never properly served with it. We conclude that service of the 1998 Subpoena was sufficient to effect personal service under the FSIA, regardless of whether Rafidain was or was not a "party" to the action at the time service was made.

The FSIA, 28 U.S.C. § 1330(b), provides: "Personal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have [subject matter] jurisdiction under subsection (a) where service has been made under section 1608 of this title." In turn, section 1608(b)(1) provides that service of process upon an agency or instrumentality of a foreign state may be made "by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the agency or instrumentality." *See Texas Trading,* 647 F.2d at 308 (holding that under the FSIA, personal jurisdiction equals subject matter jurisdiction plus valid service of process).

Paragraph six of the agreement between Rafidain and First City expressly provides that Rafidain "consents to process being served in any suit, legal action or proceeding in the New York and federal courts sitting in New York, New York, by serving

---

**3.** Contrary to Rafidain's characterization, the 1998 Subpoena (issued pursuant to Fed. R.Civ.P. 45) does seek production of evidence calculated to aid First City's collection on the money judgment entered against Rafidain. *See* 1998 Subpoena, Joint App. at 212–219.

a copy thereof (by registered mail, postage prepaid) upon the Permanent Representative of Iraq to the United Nations, with offices at the date hereof at the Iraq Mission, 14 E. 79 Street, New York, New York 10021...."

 For the reasons stated by the district court, the 1998 Subpoena was properly served on Rafidain. *See First City,* 197 F.R.D. at 254–55. First, Rafidain waived any objection to the manner of service because it does not claim lack of actual notice, yet it failed to appear or challenge the contempt order or service of the subpoena until more than eleven months after the contempt order was entered and twenty-one months after the subpoena had been served. *Id.* at 254. Second, Rafidain does not allege that it was unaware of this Court's decision dated July 16, 1998, stating that Rafidain was a party and that it must provide discovery of the sort sought in the 1998 Subpoena. *Id.* at 254–55. Third, service was valid under the Federal Rules of Civil Procedure and the Loan Agreement. *Id.* at 255. After First City's attempt to serve the 1998 Subpoena on an employee at the Iraq Mission was foiled by an employee at the Mission, the process server attached the subpoena to the door of the Mission in an addressed envelope, and sent another copy to Rafidain's then-counsel of record. Although compliance with the service requirements may not have been exact, they were substantial and sufficient. *See Harris Corp. v. National Iranian Radio and Television,* 691 F.2d 1344, 1352 (11th Cir.1982) ("The failure to follow precisely those steps in § 1608 designed to insure that actual service be made should not override and invalidate the fact that in this case notice was actually received."); *Velidor v.. L/P/G Benghazi,* 653 F.2d 812, 821 (3d Cir.1981) ("Rather than making service of foreign instrumentalities a rigid, technical, or cumbersome

procedure, Congress ... wished to insure that the sovereign owner would receive actual notice."); *Banco Metropolitano v. Desarrollo de Autopistas y Carreteras de Guatemala,* 616 F.Supp. 301, 304 (S.D.N.Y.1985) ("Given the nature of the ... problems intended to be addressed by the FSIA, strict enforcement of its technicalities here would be inappropriate."). Personal jurisdiction was therefore obtained.

## CONCLUSION

For the reasons set forth herein, we affirm the district court's denial of Rafidain's motion to vacate the civil contempt order entered for Rafidain's failure to comply with the 1998 Subpoena.