UNITED STATES FIDELITY AND GUARANTY COMPANY, and American Home Assurance Company, Plaintiffs–Appellees,

v.

BRASPETRO OIL SERVICES COMPANY and Petroleo Brasileiro S.A.–Petrobras, Defendants–Appellants,

Bank of Tokyo–Mitsubishi, Ltd., (Formerly Known as Bank of Tokyo Ltd.—Japan), Long Term Credit Bank of Japan, Ltd., Sequip ParticipaÇÕes S.A., Industrias Verolme–Ishibras S.A., IVI International, Ltd. S.A., Sade Vigesa S.A., Sade Vigesa Corporation of America, Sade Vigesa (Chile) S.A., Internacional De Engenharia S.A., Inepar AdministraÇÃo E ParticipaÇÕes S.A., Inepar Industria E ConstruÇÕes, S.A., SV Engenharia S.A., Sade Vigesa Industrial E ServiÇÕs S.A., John Doe Subsidiaries, Affiliates, Successors, Assigns, or Associated Companies or Corporations of Sequip Participacoes S.A., John Doe Affiliates, Successors, Assigns, or Subsidiaries of Sade Vigesa S.A., Sade Vigesa Corporation of America or Sade Vigesa (Chile) S.A., and John Doe Subsidiaries, Successors, Assigns, Affiliates or Associated Companies or Corporations of Inepar AdministraÇÃo E ParticipaÇÕes S.A. or of Inepar Industria E ConstruÇÕes S.A., Defendants.

Docket Nos. 99–7603, 99–7605.

United States Court of Appeals, Second Circuit.

Argued: Sept. 27, 1999

Decided: Dec. 9, 1999

Larry W. Thomas, Cameron & Hornbostel, Washington, DC, for Appellants.

Ian A.L. Strogatz, Wolf, Block, Schorr & Solis–Cohen, Philadelphia, PA, for Appellees.

Before: MESKILL, MINER, and PARKER, Circuit Judges.

PER CURIAM:

In the lead case (99–7603–(L)) of the two cases consolidated in this appeal, United States Fidelity & Guaranty Co. ("USFG") and American Home Assurance Co. ("AHAC") (collectively the "Sureties") sued Braspetro Oil Services Co. ("Brasoil"), among others, seeking a declaration of their obligations and liabilities under two performance guarantee bonds. Brasoil moved to dismiss the suit for lack of subject matter jurisdiction, lack of personal jurisdiction, and on the basis of a contractual forum-selection clause and the doctrine of forum non conveniens. The district court denied Brasoil's motion, and Brasoil seeks interlocutory review of that decision.

In the consolidated case (99–7605(CON)), the Sureties sued Petroleo–Brasileiro S.A.-Petrobras ("Petrobras"), among others, seeking damages for tortious interference with contract and for breach of obligations allegedly owing the Sureties under various payment bonds and indemnity agreements. Petrobras moved to dismiss the suit for lack of subject matter jurisdiction and on the basis of contractual forum-selection clauses and the doctrine of forum non conveniens. The district court denied Petrobras's motion, and Petrobras seeks interlocutory review of that decision.

Under the collateral order exception to the final judgment rule, this Court has jurisdiction to review the district court's findings that subject matter jurisdiction in both cases was properly premised on the Foreign Sovereign Immunities Act ("FSIA"). *See Hanil Bank v. PT. Bank Negara Indonesia*, 148 F.3d 127, 130 (2d Cir.1998). However, this Court

has no independent basis for exercising jurisdiction over appellants' challenges to the district court's personal jurisdiction and forum-related findings. As a result, appellants ask this Court to exercise pendent appellate jurisdiction over these arguments.

■ With limited exceptions, the Supreme Court has "directed the Courts of Appeals not to take 'pendent appellate jurisdiction' on interlocutory appeals of issues not themselves immediately appealable." *Rein v. Socialist People's Libyan Arab Jamahiriya,* 162 F.3d 748, 756 (2d Cir. 1998) (quoting *Swint v. Chambers County Comm'n,* 514 U.S. 35, 51, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995)). The Second Circuit recognizes only two exceptions to this rule: "(a) where an issue is 'inextricably intertwined' with a question that is the proper subject of an immediate appeal, or (b) where review of a jurisdictionally insufficient issue is 'necessary to ensure meaningful review' of a jurisdictionally sufficient one, an appellate court may exercise pendent jurisdiction." *Id.* at 757–58 (citing *Swint,* 514 U.S. at 51, 115 S.Ct. 1203). Brasoil argues that both exceptions are applicable to its personal jurisdiction and forum-related arguments. Petrobras contends that the exceptions apply to its forum-related arguments as well.

■ This Court's decisions in *Hanil Bank,* 148 F.3d at 134, and *Rein,* 162 F.3d at 760–61, support the conclusion that we should exercise pendent appellate jurisdiction over Brasoil's personal jurisdiction argument. In *Hanil Bank,* the defendant moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and (2), arguing both that it was immune from suit under the FSIA and that there were no minimum contacts sufficient to support the exercise of personal jurisdiction. *See Hanil Bank,* 148 F.3d at 130. The plaintiff, in turn, argued that the FSIA's commercial activity exception, 28 U.S.C. § 1605(a)(2), applied and that the same business contacts between the defendant and the United States that satisfied this exception served to satisfy the minimum contacts test for personal jurisdic-

tion. The district court denied defendant's motions, and this Court reviewed and affirmed both of the district court's decisions on an interlocutory basis. *See id.* at 134. The *Hanil Bank* Court found that the same commercial contacts between the defendant and the forum that placed the defendant within the commercial activity exception to the FSIA were sufficient to constitute minimum contacts for the purposes of personal jurisdiction. *See id.* at 130–34. Six months later, the *Rein* Court made explicit the finding that was implicit in *Hanil Bank,* stating that questions regarding minimum contacts for personal jurisdiction purposes and commercial contacts for FSIA purposes were inextricably intertwined. *Rein,* 162 F.3d at 760–61. Here Brasoil's subject matter jurisdiction argument turns in part on the applicability of the commercial activity exception, and its personal jurisdiction argument turns on its contacts with the forum. Thus, in this case, too, the questions of subject matter and personal jurisdiction are inextricably intertwined. *See id.*

■ In contrast, the question of whether or not the district court properly denied appellants' motions to dismiss for improper forum, either based on forum-selection clauses or on the doctrine of forum non conveniens, has little or nothing in common with the question of subject matter jurisdiction under the FSIA. Appellants do not explain how these two inquiries are inextricably intertwined or how review of the former is necessary to meaningful review of the latter. As a result, we may not entertain appellants' challenges to the district court's forum-related findings on an interlocutory basis. *See Rein,* 162 F.3d at 757–58 (citing *Swint v. Chambers County Comm'n,* 514 U.S. 35, 51, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995)).

In case number 99–7603(L), we affirm the district court's findings of FSIA subject matter jurisdiction and personal jurisdiction for substantially the same reasons set forth in the court's May 17, 1999 opinion and order. We express no view on the question of whether subject matter juris-

diction could also have been properly premised on 28 U.S.C. § 1332(a)(2).

◼ In case number 99–7605(CON), we affirm the district court's finding of FSIA subject matter jurisdiction, but for different reasons. Here plaintiffs seek to enforce indemnification agreements against Petrobras and Petrobras's co-defendants. These indemnification agreements are described in greater detail in the district court's opinions, as are the related P–19 and P–31 performance bonds and the MAC payment bond issued by the plaintiffs. Although Petrobras was not a party to these bonds or indemnification agreements, the district court found sufficient plaintiffs' allegations that Petrobras was the partner or dominator of its co-defendants. Petrobras is also being sued for tortious interference with the contract between co-defendant IVI and third party payee MAC.

With respect to the tortious interference claim, we agree that jurisdiction lies for substantially the same reasons set forth in the district court's May 17, 1999 opinion and order. With respect to claims based on the indemnification agreements, we hold that the district court properly found that Petrobras itself or through its alter-ego Brasoil engaged in acts "in connection with a commercial activity" that caused a "direct effect in the United States." *See* 28 U.S.C. § 1605(a)(2)[3]. Because we find that the acts by or attributable to Petrobras are sufficient to place it within the commercial activity exception to the FSIA and thereby to confer FSIA subject matter jurisdiction, we need not and do not consider whether Petrobras's co-defendants are Petrobras's alter egos or whether the acts of these alleged alter egos also placed Petrobras within the commercial activity exception to the FSIA.

◼ The third clause of the commercial activity exception to the FSIA excepts a foreign state from sovereign immunity where the suit is based upon an act that occurs outside the United States, that was taken "in connection with a commercial activity," and that causes a "direct effect" in the United States. 28 U.S.C.

§ 1605(a)(2)[3]. A state engages in "commercial activity" for the purposes of the FSIA when it acts not in its governmental or public role, but rather as a private player in the marketplace. *Hanil Bank,* 148 F.3d at 131.

◼ Under certain circumstances, the acts of a state's "alter ego" may be attributed to the state in determining whether § 1605(a)(2) applies. *See First National City Bank v. Banco Para El Comercio Exterior de Cuba (Bancec),* 462 U.S. 611, 629–30, 103 S.Ct. 2591, 77 L.Ed.2d 46 (1983) (acts and status of one alter ego may be attributed to the other); *First City, Texas–Houston, N.A. v. Rafidain Bank,* 150 F.3d 172, 176 (2d Cir.1998). In particular, the corporate form may be disregarded "where a corporate entity is so extensively controlled by its owner that a relationship of principle and agent is created," where "the corporate form ... is interposed to defeat legislative policies," or where recognition of the corporate form "would work a fraud or injustice." *Bancec,* 462 U.S. at 629–30, 103 S.Ct. 2591. Because the plaintiffs have made a sufficient showing at this point in the litigation that Brasoil was the "alter ego" of Petrobras, *see United States Fidelity & Guaranty Co. v. Braspetro Oil Svcs. Co.,* 1999 WL 307666, at *11 (S.D.N.Y. May 17, 1999), the acts of Brasoil are attributable to Petrobras. It should be noted that Brasoil is not a co-defendant of Petrobras in the second action.

◼ Acts of the state, in this case acts of Petrobras or its alter ego Brasoil, are "in connection with" a commercial activity when there is a substantive connection or a causal link between the acts and the commercial activity. *Hanil Bank,* 148 F.3d at 131. An effect is "direct" if it follows as an immediate consequence of the defendant's activity; the effect need not be substantial or foreseeable. *Id.*

Plaintiffs alleged, and the district court found, that Petrobras made the decision to declare its co-defendants in default. *Braspetro,* 1999 WL 307666, at *10. The district court also found that the plaintiffs

received notice of the default from "Petrobras/Brasoil." *Id.* at \*3. These acts by or attributable to Petrobras were taken "in connection with" Petrobras's commercial construction projects. The acts triggered plaintiffs' obligations under the P–19 and P–31 performance bonds and thus had the "direct effect" in the United States of giving rise to plaintiffs' claims for indemnification. The indemnity agreements require payment in the United States, are governed by New York law, and invoke the jurisdiction of the United States District Court for the Southern District of New York. *United States Fidelity & Guaranty Co. v. Petroleo Brasileiro S.A.-Petrobras,* 1999 WL 307642, at \*3 (S.D.N.Y. May 17, 1999). Thus, Petrobras is not entitled to sovereign immunity because its acts placed it within the commercial activity exception to the FSIA.

Of course, in both cases the district court may reexamine its subject matter jurisdiction findings as the factual records become more developed. *Europe and Overseas Commodity Traders, S.A. v. Banque Paribas London,* 147 F.3d 118, 121 n. 1 (2d Cir.1998).